UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
AMERICAN EAGLE OUTFITTERS, INC.
and RETAIL ROYALTY COMPANY,

                      Plaintiffs,                  **ORDER**

    - v -

                                                   CV 07-1675 (ERK) (VVP)

PAYLESS SHOESOURCE, INC.,

                      Defendant.
------------------------------------------------------x
POHORELSKY, Magistrate Judge:

       Addressed below are motions made by each party to compel production of documents withheld by their respective adversaries on the basis of objections.

## THE PLAINTIFFS' MOTION

       The discovery sought by the plaintiffs and withheld by the defendant falls into four categories, each of which is addressed in turn.

       1.    *House of Brands Documents.* Seven of the plaintiffs' document requests seek a broad array of documents relating to a so-called "House of Brands" marketing strategy developed by the defendant, of which the American Eagle shoe line marketed by the defendant was a part. The requests seek information, not only about the American Eagle shoe line, but about every brand encompassed in the strategy and for periods of time ranging back long before the American Eagle shoe line was introduced. The plaintiffs justify the breadth of their requests on the ground that the court will be required to consider the "commercial context" of the use of the American Eagle trademark. Since the plaintiffs will be obtaining a broad array of documents concerning the marketing of the American Eagle shoe line, however, those documents will inevitably also provide information about how that shoe line fit within the "House of Brands" strategy, and will likely be sufficient to provide the necessary "commercial context" for the court's consideration. Thus, to the extent the plaintiffs seek documents relating to the "House of Brands" strategy that do not specifically refer to American Eagle, the requests are overly broad and the defendant's objections are sustained.

2. *Prior Litigation Documents*. The plaintiffs have served five requests which together seek broad categories of documents relating to every litigation in which the defendant has ever been involved where intellectual property violations have been alleged. The requests include documents relating to claims of patent infringement, copyright violations, and trade dress infringement, none of which are asserted in this action. The plaintiffs argue that the requests are justified by their need to obtain evidence of willfulness. Although willfulness may be established by evidence of prior litigation in which a party has been involved, the cases cited by the plaintiffs in support of their argument all involved situations where a party's conduct giving rise to prior litigation was similar or identical to the conduct giving rise to the claims under review. *E.g., Johnson & Johnson Consumer Cos. v. Aini*, 540 F. Supp. 2d 374 (E.D.N.Y. 2008); *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849 (2nd Cir. 1995). Here the plaintiffs have made no attempt to limit their requests in any fashion, much less to conduct similar to that which gives rise to the claims here. The plaintiffs also seek to justify their requests with the argument that by gathering such a broad array of documents they may unearth admissions damaging to the defendant. Requests based on such hope, particularly requests as broad as these, are not *reasonably* calculated to lead to admissible evidence. Although some properly limited discovery concerning prior litigation might be appropriate, the various requests at issue, as they are presently framed, are considerably overbroad and the defendant's objections to them are accordingly sustained.[1]

3. *Product Recall Documents*. The plaintiffs have requested documents concerning all product recalls issued by the defendant over the last ten years on the ground that such information will shed light on the defendant's reputation. The connection between product recalls and a retailer's reputation, i.e., how a retailer is viewed by the public, is at best only indirect, and the plaintiffs have offered no support of any kind that such a connection exists. Nor have the plaintiffs cited any authority that product recalls have ever been considered by any court on the issue of a retailer's reputation. The defendant has agreed to produce all documents "concerning the quality of goods bearing the AMERICAN EAGLE and/or AE marks," Payless

---

[1] The court assumes, as the defendant appears to assert, that Payless will produce all documents relating to any litigation, actual or threatened, involving any of the marks at issue here. Payless Ltr., Nov. 24, 2008, at 4.

Ltr., Nov. 24, 2008, at 5, which the court understands to include documents concerning product recalls for those goods. The defendant's objection to providing documents relating to other product recalls is sustained.

    4. *Trademark Use Guidelines.* The plaintiffs seek all documents concerning the defendant's "proper use" of its brands and trademarks without limitation as to time or brand. In essence the request seeks information about the uses of each and every mark Payless has the right to use. The justification for the breadth of this request is that it will provide evidence about the defendant's knowledge of the proper and improper use of trademarks, and will furnish a basis for determining whether the defendant's use of the marks at issue here deviates from its corporate guidelines on the use of trademarks. A deviation, it is argued, would demonstrate the defendant's "calculated intent to trade on AEO's goodwill and to confuse the public." AEO Ltr., Nov. 17, 2008, at Page 6. The court fails to see how differences between and among the defendant's uses of the various marks it has the right to use, including the marks at issue here, is proof of an intent to trade improperly on the marks at issue here. The question for the court in this case will not be whether the defendant's use of the marks here differed from its use of other marks, but whether its use of the marks violated the plaintiffs' rights. The defendant has agreed to produce all documents relating to its use of the marks at issue here. Discovery beyond that appears to be nothing less than the proverbial "fishing expedition." The defendant's objection to production of documents relating to its uses of other marks is sustained.

## THE DEFENDANT'S MOTION

    The defendant and the plaintiffs have been unable to agree on the scope of discovery of two categories of documents sought by the defendant.

    1. *Advertising, Marketing, and Promotional Materials.* The defendant seeks "All documents concerning or reflecting AEO's advertising, marketing or promotion of goods bearing any mark containing or comprising the term 'American Eagle' or 'AE,' including, but not limited to, all documents concerning any similarities between AEO's advertising, marketing or promotional materials and the advertising, marketing or promotional materials of any other company or brand." Because the request is not limited as to time, and concerns the two primary marks AEO has used in its 30 years of existence, it seeks virtually all documents relating to

AEO's advertising and marketing efforts throughout that period of time. The defendant justifies the breadth of this request with the argument that the information is needed to rebut AEO's central allegation that the defendant has copied the look and feel of AEO's marketing materials. As AEO has not identified specifically which of those materials underlie the allegation, it is argued, the defendant must have access to all of them. Of course, the production of all of the marketing materials will not solve that problem: the defendant will simply have 30 years of marketing materials to wade through without necessarily gaining any greater understanding about which of them underlie the allegation. The production the defendant seeks therefore makes no sense. The plaintiffs' offer to produce representative samples of all of its advertising, marketing and promotional materials is sufficient. The defendant's dilemma concerning specificity as to the specific advertising materials the plaintiffs will rely on to establish their "look and feel" allegation can be solved by some other discovery mechanism such as a response to a contention interrogatory. As for that part of the defendant's request that seeks documents concerning similarities between the plaintiffs' advertising materials and those of other retailers, the plaintiffs' offer to produce documents relating to the *Abercrombie & Fitch* litigation, coupled with their assertion that they are unaware of any claims by itself or others concerning alleged similarities in promotional materials, is an adequate response.

    2. *Other Coexistence Agreements*. The defendant seeks "all documents concerning or constituting any other Co-existence Agreements (in final or draft form) to which AEO is a party." Because the interpretation of several provisions in the Agreement here is disputed, other Co-existence Agreements to which AEO is a party, and not only those involving the marks in question here, may well be relevant to the interpretation of the disputed provisions, at least to the extent that they contain provisions similar to those disputed here and were negotiated or drafted by the same persons. *E.g., Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430, 2007 WL 4410405, at *2-3 (S.D.N.Y. Dec. 17, 2007); *Wilshire State Bank v. St. Paul Mercury Ins. Co.*, No. CV 04-10239-ER, 2005 WL 6133908 at * 2 (C.D. Cal. Sept. 19, 2005). Because the defendant's request here is not limited in any fashion, however, it is overbroad.

Accordingly, the parties are encouraged to come to agreement on a properly limited scope of agreements to be produced. If they are unable to do so, the defendant may seek further judicial intervention.

**SO ORDERED:**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
      January 21, 2009