UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
AMERICAN EAGLE OUTFITTERS, INC.
and RETAIL ROYALTY COMPANY,

                Plaintiffs,                   **OPINION AND ORDER**

    - v -

                                                       CV 07-1675 (ERK)(VVP)

PAYLESS SHOESOURCE, INC.,

                Defendant.
------------------------------------------------------x
POHORELSKY, M.J.:

        The plaintiffs American Eagle Outfitters, Inc. and Retail Royalty Company ("AEO") have moved to compel the defendant Payless ShoeSource, Inc. and a non-party, Jimlar Corporation, to produce documents withheld on the ground that they are privileged. The motion requires the court to consider the scope of the "common interest rule" when its protections are asserted by persons whose interests in a given litigation, while similar, are not identical in all respects, as well as the perhaps more familiar contours of the work product doctrine. In the circumstances presented here, the court concludes that Payless and Jimlar have properly asserted the common interest rule and the work product doctrine with respect to the information for which they have sought shelter.

### BACKGROUND

        This case arises from the defendant's use of marks relating to the phrase "American Eagle" which both AEO and Payless have the right to use with respect to certain products. Generally speaking the plaintiffs have the right to use the marks in connection with a broad range of items of apparel, while the defendant has the right to use the marks in connection with shoes and handbags. The defendant acquired its right to use the marks under an agreement with

non-party Jimlar in which Jimlar has assigned all of its rights to the marks to Payless. Prior to that assignment, Jimlar and AEO had attempted to define their respective rights to the use of the marks in a "Coexistence Agreement" that emerged from negotiations between Jimlar and the AEO after a number of years during which they had each separately used the marks, apparently without serious dispute. In addition to assigning Jimlar's trademark rights to Payless, the Jimlar-Payless agreement assigns to Payless all of Jimlar's rights under that Coexistence Agreement. More significantly, at least for purposes of this motion, the Jimlar-Payless agreement anticipates potential litigation by AEO by including a provision under which Jimlar agrees to indemnify and defend Payless against certain kinds of claims that AEO might assert against Payless.

Jimlar's and Payless's prescience regarding potential litigation was quickly confirmed, for shortly after the Jimlar-Payless agreement was concluded, AEO did indeed initiate this action against Payless, asserting claims under federal and state law for trademark infringement, unfair advertising, unfair competition, and breach of contract. Among the items of relief sought by AEO is a declaratory judgment that the assignments of Jimlar's trademarks and the Coexistence Agreement to Payless are invalid.

During discovery, AEO has requested various categories of documents from Payless and Jimlar concerning their agreements with one another. Although Payless and Jimlar have produced all relevant documents responsive to those requests that predate the onset of this litigation, they have withheld subsequently created documents which they assert are protected by the common interest privilege and the work product doctrine. Jimlar created a log listing the

various documents they have withheld on the basis of privilege.[1] At oral argument on the motion, the court made a preliminary finding that Payless and Jimlar shared sufficient common interests with respect to this action to permit them to obtain the protections afforded by the common interest privilege, but permitted AEO to designate 10% of the documents listed on log for the court to review *in camera* to determine whether the privilege has been properly asserted. Jimlar has submitted the documents designated by AEO, and the court has now completed its *in camera* review.

## DISCUSSION

Although often referred to as a privilege, the common interest rule is actually only "an extension of the attorney-client privilege and not an independent basis for privilege." *Pem-America, Inc. v. Sunham Home Fashions, LLC*, No. 03 Civ. 1377, 2007 WL 3226156, at *2 (S.D.N.Y. Oct. 31, 2007) (*citing United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)). "[I]t is an exception to the general rule that the privilege is waived when confidential information is communicated to a third party. If the third party and the client share a common legal interest, the rule applies and the privilege is not waived." *In re Federal Trade Commission*, No. M18-304, 2001 WL 396522, at *2 (S.D.N.Y. April 19, 2001). "It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Schwimmer*, 892 F.2d at 243. The rule may be invoked whether or not an action has been commenced, *e.g., Vacco v. Harrah's Operating Co.*, No. 1:07-CV-0663, 2008 WL

---

[1] Jimlar also asserts that many of the documents are not relevant to this action because they could not reasonably lead to admissible evidence.

4793719, at *8 (N.D.N.Y. Oct. 29, 2008) (*citing Schwimmer*, 892 F.2d at 243-44), and may also cover non-parties after an action has been commenced, *e.g., Lugosch*, 219 F.R.D. at 238-39.

As with any privilege, those seeking its protection bear the burden of establishing its applicability. *Id*. at 244. This requires a showing of "actual cooperation toward a common legal goal." *In re Rivastigmine Patent Litigation*, No. 05 MD 1661, 2005 WL 2319005, at *4 (S.D.N.Y. Sep. 22, 2005). A written collaboration agreement, while not required, provides strong proof of such actual cooperation. *See, e.g., Id.* (*citing United States v. United Technologies*, 979 F. Supp. 108, 110 (D. Conn. 1997). Although some courts in this circuit have articulated a requirement that the common interest be "identical" and not merely "similar," *see, e.g., Johnson Matthey, Inc. v. Research Corp.*, No. 01CIV.8115, 2002 WL 1728566, at *5-6 (S.D.N.Y. July 24, 2002) (*citing SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, No. 01 Civ. 9291, 2002 WL 1334821, at *3 (S.D.N.Y. June 19, 2002)), that requirement has been called into question, *see Eugenia VI Venture Holdings, Ltd. v. Chabra*, No. 05 Civ. 5277, 2006 WL 1096825, at *2 (S.D.N.Y. Apr. 25, 2006) (questioning the origins and validity of the "identical not merely similar" requirement), and other courts have simply focused on whether the parties had interests in common without exploring whether they were identical. *See, e.g., Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560, 2008 WL 4452134, at *7-8 (S.D.N.Y. Oct. 2, 2008); *Lugosch v. Congel*, 219 F.R.D. 220, 236-39 and 241-42 (N.D.N.Y. 2003). Thus, the fact that the parties asserting the rule have some diverging interests does not eradicate, but rather only limits, the scope of the protection it affords. *See In re Rivastigmine*, 2005 WL 2319005, at *4.

The existence of a common interest sufficient to invoke the protections of the common interest rule with respect to attorney-client communications typically also serves to extend work-

product protection to work product shared among the parties who have that common interest. *See, e.g., Kingsway*, 2008 WL 4452134, at *10; *Lugosch*, 219 F.R.D. at 241-42. This is because voluntary disclosure of work product to third parties does not constitute a waiver of work-product protection unless the disclosure "substantially increases the opportunity for potential adversaries to obtain the information." *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 641 (E.D.N.Y. 1997) (*quoting In re Grand Jury Subpoenas Dated December 18, 1981 and January 4, 1982*, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)); *accord, e.g., In re Crazy Eddie Sec. Litig.*, 131 F.R.D. 374, 379 (E.D.N.Y. 1990) ("[T]he [work-product] privilege protects information 'against opposing parties, rather than against all others outside a particular confidential relationship' . . .. Counsel may therefore share work product . . . with those having similar interests in fully preparing litigation against a common adversary."); *Cellco Partnership d/b/a Verizon Wireless v. Nextel Communication, Inc.*, No. M8-85, 2004 WL 1542259, at *1 (S.D.N.Y. July 9, 2004). Thus, "[t]he exchange of work product among attorneys with identical litigation perspectives should not render such tangible information vulnerable to pre-trial discovery." *Lugosch*, 219 F.R.D. at 240 (*citing Transmirra Prod. Corp. v. Monsanto Chem. Co.*, 26 F.R.D. 572, 578 (S.D.N.Y. 1960))(internal quotations omitted).

Given these principles, the court has little difficulty concluding that Payless and Jimlar share a common legal interest that entitles them to the protections afforded by the common interest rule, at least with respect to matters at issue here where there interests do not diverge. They both have an interest in upholding the validity of the trademark rights possessed by Jimlar and assigned to Payless. They have an interest also in upholding the validity of the assignment agreement itself, which AEO seeks to negate in this action. Their common interest is fortified by

the indemnification provision in the assignment agreement which requires Jimlar to defend and indemnify Payless with respect to claims by AEO attacking the validity of the assignment of Jimlar's assets to Payless. In recognition of their common interest, they entered into a joint defense agreement shortly after the commencement of this action.

Paradoxically, perhaps, the same indemnification provision that serves to unify their interests also leads to some divergence in their interests, for it excludes from its coverage certain of the claims made by AEO here, including a claim that Payless has breached the Coexistence Agreement. Thus, to the extent that AEO asserts claims not covered by the indemnity provision, Jimlar has no obligation to fund any defense costs or liability incurred by Payless in this litigation. AEO therefore argues that communications between Jimlar and Payless concerning the scope of the indemnification provision – and the claims here do not all neatly fall within or without its limits – should not be covered by the common interest rule, since their interests on that issue obviously diverge. Payless has a strong financial interest in a broad reading of the obligation while Jimlar has an equally strong financial interest in a limited reading.

There are several difficulties with AEO's argument. First, to the extent that there may be client confidences shared between Payless and Jimlar, it is impossible to segregate client confidences relating to claims covered by the indemnity provision from confidences relating to claims that are not. All of the claims in AEO's complaint rely on essentially the same core of factual assertions, and thus any relevant client confidences would concern both claims that are covered and claims that are not. As a practical matter, then, the common interest rule either covers all confidences or none. In choosing between these two options, the court must consider practical realities. If Payless prevails on all claims in this action, that will redound to both its and

Jimlar's benefit, since neither will have any liability for damages. In obvious recognition of this joint interest and others, as demonstrated by their decision to enter into their joint defense agreement, Payless and Jimlar have evinced their conclusion that successfully defending Payless in this action overrides any differences they may have with respect to the scope of the indemnity provision, at least for the time being. Given their mutual interest in the overall outcome of the litigation, it serves the purpose of the common interest rule to permit Payless and Jimlar to obtain its protection notwithstanding that they may disagree about a collateral matter, i.e., the scope of their respective obligations under the indemnity provision.

There is a second difficulty as well. Even if the common interest rule does not protect client confidences, any documents reflecting communications between Jimlar and Payless concerning the claims in this litigation necessarily constitute work product. As now articulated in Rule 26(b)(3) of the Federal Rules of Civil Procedure, work product protection is afforded to "documents . . . prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative." In the Second Circuit, a document is considered to have been prepared "in anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original)(*quoting* 8 Charles Alan Wright, et al., *Federal Practice & Procedure* § 2024 at 343 (2d ed. 1994)). That definition certainly covers all communications between Jimlar and Payless concerning the claims in this action. Given the overriding common interest shared by Jimlar and Payless, signified by their joint defense agreement, the work product they share with one another remains protected since the sharing of those matters with one

another does not materially increase the likelihood that the matters will be disclosed to AEO. *See, e.g., Magee*, 172 F.R.D. at 641; *In re Crazy Eddie Sec. Litig.*, 131 F.R.D. at 379; *Cellco Partnership*, 2004 WL 1542259, at *1.

Having concluded that Payless and Jimlar have a sound basis for asserting that documents reflecting their communications with each other concerning the claims in this case are protected under the common interest rule and the work product doctrine, the court has reviewed the various items supplied to the court by Jimlar pursuant to the order permitting AEO to identify items for *in camera* review. The court finds that the documents reviewed have been properly withheld from disclosure.[2] Accordingly, the plaintiff's motion is denied.

**SO ORDERED:**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
      November 12, 2009

---

[2] As an aside, the court also finds nothing in the documents that would constitute evidence, or that would be reasonably like to lead to admissible evidence.